IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA

                          Plaintiff,

vs.

DESHALON BOSHA JELKS,

                          Defendant.

Case No. 3:26-mj-00124-MMS

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Michael Harkless, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is submitted in support of a criminal complaint against DESHALON BOSHA JELKS (JELKS) for violating 18 U.S.C. § 2113(a) – Bank Robbery.

2.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.     I am a Special Agent with the Federal Bureau of Investigation. I have been a Special Agent with the FBI for approximately four years. I am currently assigned to the Violent Crime Squad in the FBI's Anchorage Field Office. Prior to employment with the FBI, I served as an active-duty Army officer from May 2011 to January 2022.



4.     As part of my FBI duties in the VC Squad I investigate and assist with investigations in criminal violations of federal law, to include federal sex trafficking and prostitution offenses, racketeering offenses, bank robberies, firearms violations, and the Controlled Substances Act.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

**RELEVANT STATUTES AND REGULATIONS**

6.     The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below.

   a. 18 U.S.C. § 2113(a), states: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;"

**INVESTIGATION AND PROBABLE CAUSE**

7.     At approximately 5:58 pm on February 26, 2026, a male subject entered the Credit Union 1 at 4020 Debarr Road, Anchorage, AK 99508.  The male approached Victim Teller One (VT-1) and produced a note.  The note stated, "I have a weapon.  And

*Affidavit in Support of Complaint*
3:26-mj-00124-MMS                          Page **2** of **7**



that weapon I am armed with the power & authority of Jesus Christ. Empty the drawer into an envelope do not set off the alarm. -Neeclti sent me. -Thank you."

8.     VT-1 emptied the till of money and handed it to the subject in an envelope. The money included a bait bill and tracker. Once the bait bill was removed from the till it activated a silent alarm notification to Anchorage Police Department's (APD) dispatch as well as the tracking device.

9.     The male subject took the envelope with the money and left the Credit Union 1. Credit Union 1 surveillance cameras captured footage of the subject's activities. A still shot of the subject was provided to APD and later to SA Harkless.





10. APD Dispatch tracked the tracker's location from the time of the tracker's activation. The tracker started at Credit Union 1 at 4020 Debarr Road, they moved across Debarr Road and were inside Costco Wholesale located at 4125 Debarr Road. Your affiant knows the Costco at 4125 Debarr Road is directly north and across the street from Credit Union 1 and is within walking distance of Credit Union 1.

11. APD arrived at Costco and observed the male subject in the same clothes that were worn by the subject in Credit Union 1. APD detained the subject and identified him as DESHALON JELKS. Officers informed SA Harkless that JELKS initially resisted being detained, that JELKS had a large amount of money in his hands which spilled on the floor during the detention, and was found with the bait bill tracking device.

12. Officers provided SA Harkless and SA Sheffield with approximately $1,701.00 seized from JELKS as well as the note initially produced during the robbery at Credit Union 1. SAs Harkless and Sheffield transported both to FBI Anchorage and entered them into FBI's evidence.

13. SA Harkless and Sheffield interviewed VT-1. VT-1 stated between 5:30pm and 6:10pm VT-1 was robbed by a male light skinned African American with freckles (subject). The subject was wearing large, framed glasses, had a hoodie on, and a mask over his face. The subject handed VT-1 a note that stated something to the effect of having a weapon and wanting money. VT-1 was nervous during the encounter because of an adrenaline rush caused by the incident. VT-1 was nervous because the branch was busy at the time with lots of other customers and VT-1 was fearful the subject may start hurting people if he was not given money. VT-1 emptied VT-1's till of money, which included a

bait bill with tracker, and tried to give it to the subject. The subject told VT-1 to put it in an envelope. VT-1 put the money in an envelope and handed it to the subject. The subject then departed.

14.     Your affiant requested a copy of security footage from Credit Union 1 as well as a copy of Credit Union 1's National Credit Union Share Insurance Fund. Vice President of Enterprise Security for Credit Union 1 would prepare a copy of both for FBI Anchorage.

15.     Your affiant and SA Michael Sheffield conducted a custodial interview of JELKS at APD's Headquarters. The interview was recorded via APD's recording equipment. Your affiant recognized several articles of clothing JELKS was wearing from the Credit Union 1 surveillance footage, specifically: JELKS's fleece cap, glasses, jacket, and a handkerchief around JELKS's neck. Your affiant also observed JELKS had an electronic monitoring device around his ankle.

16.     After being advised of his Miranda Rights, JELKS initially stated he already had a lawyer and that his rights had been violated. SAs Harkless and Sheffield sought further clarification and JELKS explained he had a lawyer for a separate state charge. SAs Harkless and Sheffield advised JELKS that the SAs did not want to talk to JELKS about his state charge but specifically the bank robbery that occurred that night and JELKS's involvement with it. SAs Harkless and Sheffield again advised JELKS of his Miranda Rights related to the robbery and JELKS acknowledged his rights and wanted to talk with the SAs.



17. During the interview, JELKS stated being dropped off at Denny's on Debarr Road by a friend. JELKS ate a meal at Denny's and then left. After leaving Denny's, JELKS walked across the parking lot and entered Credit Union 1. JELKS approached the teller and asked if JELKS could have money. JELKS did not rob the bank. JELKS did not state having a weapon to the teller. JELKS told the teller JELKS was armed with the authority of Jesus Christ. JELKS asked the teller if JELKS needed to provide identification. JELKS desperately needed money. JELKS then left Credit Union 1.

18. After leaving Credit Union 1, JELKS called his mom and his pastor. JELKS then walked across the street towards Costco. JELKS went to Costco to find his girl who worked as an Instacart packer. While at Costco he was suddenly grabbed by several men who were yelling Anchorage Police.

19. SA Harkless and Sheffield asked JELKS for his consent to search JELKS's phone. JELKS provided consent and signed a consent form. SA Harkless and Sheffield briefly perused several calls and text messages around the time of the robbery. SA Harkless and Sheffield noted several calls around the time of the robbery. Additionally, SA Harkless and Sheffield observed a message with the latest time-stamp at approximately 6:00pm. The message thread only contained two lines. The first originated from JELKS phone and inquired if the other number knew where to find "go." JELKS's message was time-stamped at approximately 7:00am on February 26, 2026. A reply to JELKS's message came in shortly after 6:00pm on February 26, 2026, stating in effect, yes, and where was JELKS. SA Sheffield and Harkless inquired what "go" was. JELKS stated it was for a car ride. SA Sheffield informed JELKS that he worked drug investigations and

*Affidavit in Support of Complaint*



knew "go" was common slang for methamphetamine. JELKS then explained that he used a small amount of methamphetamine infrequently. JELKS did not know how he got the phone number.

20. Your affiant and SA Sheffield informed JELKS he was being arrested for bank robbery and was going to be taken to the Anchorage Correctional Complex.

21. During the prisoner transport, JELKS inquired if he would receive any of the money back. The SAs informed him that the money was going to be taken to FBI evidence. This application was reviewed by AUSA Thomas Bradley.

## CONCLUSION

22. Based upon the information above, your affiant submits that there is probable cause to believe that on February 26, 2026, DESHALON BOSH JELKS took and carried away, money belonging to, or in the care, custody, control, management, or possession of Credit Union 1 at 4020 Debarr Road, Anchorage, AK 99508 in violation of 18 U.S.C. § 2113(a) – Bank Robbery.

Respectfully submitted,

*Michael Harkless*

**Michael Harkless**
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 [and 41(d)(3) this 27th day of February , 2026.

_____
HON. MATTHEW M. SCOBLE
United States Magistrate Judge
District of Alaska

*Affidavit in Support of Complaint*
3:26-mj-00124-MMS                    Page **7** of **7**